PETITION FOR A RE-HEARING BY
JAS. HAGGIN ESQ,.
April 28.
On the trial of the suit in the circut court, McConnell &c. to make out their title, offered in evidence a deed which purported to have been made by Hughes, as attorney for Oneal. to John Craig, in the year 1806, and the letter under which Hughes acted.
This letter of attorney authorised Hughes to release to Craig, 1000 acres, “referred to in a bill in chancery filed by me in a suit now depending in the General court, against the said Craig, upon Craig’s assigning to him, a bond he has on Col. Richard Young, for 1000 acres in Gallatin county.” The circuit court rejected the deed, for two reasons, to wit: The bill in chancery of Oneal against Craig or a copy of it from the General court, was not produced to shew, what tract of laud Hushes was authorised to convey, and because it did not appear that Craig had assigned the bond on Young for 1000 acres of land in Gallatin.
It is now decided that the circuit court erred. I would, however, express a different hope, and earnestly entreat a re-consideration of the point.
*402 It was indispensable, to enable McConnell to avail himself of this deed, to shew a written authority from Oneal to Hughes, to execute it. The authority produced, however, is special and conditional.
First, as to the extent of the power. The agent was only authorised to release one particular specified tract. What tract was that? The letter of attorney as produced, contains a very imperfect and unsatisfactory description of the. tract. The parties to it seem to be Sensible of this, and, therefore, refer for its specification, to a bill in chancery, of record, in the office of the General court, where the power is also recorded, filed by Oneal against Craig. Thus we are assured that there is a record, which contains a description of the tract to which this letter of attorney has allusion. Then I say, there is on earth, no testimony for this purpose, equivalent to that record. It is the most direct and certain; that to which the mind, acting upon the responsibility of an oath, and resolved to attain to the truth, would at once turn. Every thing else, in the absence of this bill, is but secondary and subordinate, and whilst the rule prevails, requiring the best testimony in the power of the party, it cannot be superseded. Say, so indispensable is this bill, it is in legal contemplation, constituted, as regards a description of the land, a part of the letter of attorney itself. Such is the effect of the reference. And in its absence we have but a part of the letter of attorney. Say that the letter of attorney, had refered to a survey in the Register’s office, in the name of Oneal, recorded in book A. page 200, as descriptive of the land to be conveyed, or to a deed from A to him, recorded in the Genera] court, in a certain book and page. Would you permit oral proof that in fact this was the tract intended, for the witness had read it. and it contained terms precisely descriptive of this, and inapplicable to another tract, claimed by Oneal. Then there is nothing in the rule, requiring the best evidence, and parol maybe received instead of the letter itself Indeed, the deed may be supplied by the recollection and the *403 judgment of witnesses, and no effort is necessary to obtain the written document.
We act more frequently upon this principle in-cases of entries for land: and familiar cases best plain. A. makes an entry on the head of Cane run, and B. makes one adjoining A. on the lower side. Would oral proof be admitted of the calls of the entry of A. without effort to obtain, a copy? It has never, I presume, been attempted. By adoption the locative calls of A. become those of B, likewise,, they are all in writing, and they, or copies, must be produced for inspection.
I hesitate to recapitulate the proof and to controvert the inferences drawn from it. The question is. of competency. Was or was not this deed read on the trial of Jouitt’s ejectment against the widow? Was it scrutinized, or did it pass sub silentio? Has the guardian who filed his bill for the purpose of maintaining the entry of the infants, undertaken to pronounce on the validity of this deed, and if he has, ate the heirs bound by this admission of his bill in chancery? Has the widow improvidently made concessions in the progress of her litigation, with Jonitt? And are the heirs bound by them? These are all questions by no means difficult, as I really apprehended, but as deductions have been drawn from the affirmative of some of them, I beg leave to repeat, that the controversy is not, how muck they tend to prove, in favor of that deed, but are they admissible in law, to shew that the agent acted in his sphere, without the production of the record referred to, as part of the letter of attorney.
The case of Swann and Wilson, 1 Marshall is illustrative of the principle I would support. Swann, the plaintiff in ejectment, introduced a patent, to Charles Severas. He insisted that this error in the name was clerical—it should have been Swann. He shewed the entry, from the surveyor’s office, in the true name; proved, that he had been uniformly acknowledged the proprietor, and that one of the name of Severns had never been heard of in the neighborhood, That he had even leased *404 and delivered possession to Wilson in the year 1794, who. hod continued on it ever since: the plaintiff residing in Pennsylvania. Wilson introduced a bill in chancery, which he had filed in the, Jessamine circuit court, of recent day, in which he avowed Swann to be the grantee, and prayed that lie might be compelled to release to and entry which he, Wilson, had acquired from Craig. He shewed a decree to that effect, obtained by publication against Swann, but he had not acquired a need After all this proof, on motion of Wilson’s attorney, Swann, was nonsuit, because be did not also produce a copy of the survey. and this court affirmed the judgment, Now, it .is believed that none who heard the proof, could doubt as to the identity of the grantee, yet the court considered the survey more appropriate, in legal contemplation, to shew the fact; and therefore, required it. Surely for Swann the case was stronger than it is at present for McConnell. An entry in the name of Swann, a claim by him under this patent without opposition, a lease and possession in conformity by the defendant himself, his own bill acknowledging Swann to be the grantee, his publication and decree, and no adverse pretender ever known, were circumstances ample. Yet the survey was held to be more direct and unerring, and the rule prevailed. Here the infants are to be compromited by acts of their guardians and officious friends. And the record, not only superior or of at least equal grade, and more explicit, is dispensed with, and that too, notwithstanding the parties to the. transaction expressly refer to it, as the test of their intent.
Touching the condition. The agent was only to, convey upon the condition of Craig’s assigning to him a bond on Young for 1000 acres in Gallatin. We have no proof that this was done, except the deed recites that it is in consideration off the assignment of Young’s bond, for one thousand acres, patented to Craig, about thirty miles from the mouth of Licking. It is not admitted that this is the same land, or rather that it is so proved. For our consideration for the. agent, would recognize his act to a very great extent.
*405 They must shew that the condition was fulfilled. It is not even sufficient for the agent to say it. But be has not said it. In the case of McClary’s heirs and Lancaster it was held to be indispensable for the plaintiff to prove that the principal had given bond for the land to the grantee, as the letter of attorney only conferred an authority to convey in conformity to such an instrument. The case, however, of Duke and Bruce, is conclusive, if it be law, as we suppose; See 2 Litt. 244. Bruce set up title under a deed from Barry as the agent of Maury. The letter of attorney among other provisions indicating a high confidence, authorised the agent (if necessary) to make sale of any of his lands in Kentucky. It was held, that to give effect to this deed, it must be shewn to be necessary to sell. For that purpose the deposition of Barry was taken, he stated that he found himself under the necessity of selling. This court says that by the most liberal rule applicable to the subject, it is insufficient. The circumstances, the facts should be shewn, that the court might judge of the necessity. They combat the propriety of any inference m favor of the deed from tilt act of the agent, and they with their usual ability, shew that it would be in prostration of all the rules of special and limited power. Although Barry sold, and swore that it was necessary that he should sell Maury’s lands. no intendment, was indulged, but the special circumstances to bring it within the pale of the authority must be set forth. In this case there is not the scintilla of proof that the bond assigned on Young was in Gallatin. I is true it may have been so without outrage upon geographical boundaries. But it might just as conveniently and probably be in several other counties. Unless contrary to the rules asserted in the case of Duke and Bruce, we are disposed to presume in favor of the act of the agent, we have no authority for saying this tract lay in Gallatin. Most certainly it would have been as just to admit, as Barry swore, that it became necessary to sell the lands, that it was so in truth, as to find, because a tract is to lie within thirty miles of the month of Licking, that it, therefore, lay in the county of Gallatin.
To make out title under a deed of conveyance executed by an agent acting under a limited authority, proof must be made of those things having been done upon the happening of which the agent was authorized to act.
Whether we, therefore, enquire into the tract is be conveyed by the agent, or the condition upon which that conveyance was to be made, agreeably to authority, and especially to the precedents afforded by this honourable tribunal, we would say that the opinion pronounced was not sustainable.
Other questions are involved in the cause, in relation to which, after much investigation, I sincerely believe, have been misconceived. Somewhat as regards fact, as well as law. But it seemed expedient at present only to call the attention of the court to those upon which I have dwelt, because less investigated in the argument, and more clear and familiar in practice. If, as I trust, the cause shall be opened, I will be permitted to advert to those points.
I have endeavoured to perform, but rather hastily, a duty at all times painful, and at present peculiarly so. I am well apprised of the onerous duty, and immense responsibilities, at this moment attending this court, and to ask more than my reasonable share of their time and consideration, may even savor of illiberality. But the inheritance of my clients, now reduced to a pittance, rests upon the effort, and the presumption will, I trust be excused.